UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEO TERMINELLO,
      Petitioner,

v.                                Case No. 8:20-cv-2257-KKM-MRM

SECRETARY, DEPARTMENT
OF CORRECTIONS,
      Respondent.
_____

## ORDER

Terminello, a Florida prisoner, filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his state court conviction based on alleged failures of his trial counsel. (Doc. 1.) Having considered the petition, (*id.*), the response opposing the petition as time-barred or alternatively as without merit, (Doc. 11), and the reply, (Doc. 21), the petition is denied. Because reasonable jurists would not disagree, a certificate of appealability also is not warranted.

## I.   BACKGROUND

### A. Procedural Background

A state court jury convicted Terminello of ten counts of lewd or lascivious conduct (touching) and one count of lewd or lascivious conduct (solicitation). (Doc. 14-2, Ex. 2,

1

pp. 242-47.) The state trial court sentenced him to an overall term of 20 years in prison, followed by 10 years on sex offender probation. (*Id.*, pp. 275-92.) The state appellate court per curiam affirmed the convictions and sentences. (*Id.*, Ex. 7.) The state appellate court also per curiam affirmed the denial of postconviction relief. (Docs. 14-3 through 14-26, Exs. 32-55, 61.)

### B. Factual Background

The victim, an eight-year-old girl, was Terminello's next-door neighbor. (Doc. 14-2, Ex. 3, pp. 208, 319.) The victim's family moved into their house in April 2005. (*Id.*, p. 207.) The victim became friends with Terminello's children and regularly went to his house. (*Id.*, pp. 209-10, 315-17.)

In July or August 2005, Terminello began having the victim play "horse dance" with him. (*Id.*, pp. 318, 353.) Terminello would sit on the couch and would have the victim sit on his lap while "both of [their] legs [were] open." (*Id.*, pp. 321-22.) For two or three minutes, Terminello would rock back and forth. (*Id.*, pp., 321-22, 329.) The victim stated that as Terminello moved, she "felt something hard . . . around his private part." (*Id.*, pp. 323-25.) Terminello directed her not to tell her parents. (*Id.*, p. 327.) At one point, the victim participated in a fundraiser for her school. (*Id.*, pp. 330-31.) When the victim came

to Terminello's house for the fundraiser, Terminello answered the door and told her he would give her a donation if she played horse dance with him. (*Id.*, p. 331.)

In December 2005, the victim told her 11-year-old friend about what Terminello did. (*Id.*, pp. 276, 282, 334.) The friend urged the victim to tell her parents. (*Id.*, pp. 282-83, 300, 335.) The friend said that if the victim did not do so, then the friend would tell her own mother. (*Id.*, p. 283.) The victim told her mother the day after this conversation with her friend. (*Id.*, pp. 335.) On January 13, 2006, the victim underwent a forensic interview in which she described the events. (*Id.*, pp. 375-417.)

## II.   <u>TIMELINESS</u>

Respondent contests the timeliness of Terminello's petition. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Under the AEDPA, a federal habeas petitioner has a one-year period to file a § 2254 petition. 28 U.S.C. § 2244(d)(1). This limitation period begins running on the later of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitation period is tolled for the time that a "properly filed application for State post-conviction or other collateral review" is pending in state court. 28 U.S.C. § 2244(d)(2).

Terminello's convictions and sentences were affirmed on March 5, 2010. (Doc. 14-2, Ex. 7.) Therefore, his judgment became final on June 3, 2010, when the 90-day period to petition the Supreme Court of the United States for a writ of certiorari expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). After 133 days of untolled time elapsed, Terminello filed a motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a) on October 15, 2010. (Doc. 14-2, Ex. 10.) The motion was denied on November 1, 2010. (Doc. 14-2, Ex. 12.) Terminello did not appeal but the limitation period remained tolled for the 30-day period to do so. *See Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006). Therefore, the limitation period began running again on December 2, 2010.

After another 124 days of untolled time elapsed, Terminello filed a second Rule 3.800(a) motion to correct an illegal sentence on April 5, 2011. (Doc. 14-2, Ex. 13.) The motion was denied on April 26, 2011. (Doc. 14-2, Ex. 14.) As Terminello did not appeal, the AEDPA limitation period was tolled for another 30 days. When the limitation period began running again on May 27, 2011, Terminello had 108 days, until September 12, 2011, to file his § 2254 petition absent any other tolling applications filed in state court.

No other motions were docketed in the state court until Terminello filed a Rule 3.850 postconviction motion on March 12, 2012, after the AEDPA limitation period

expired. (Doc. 14-3, Ex. 32, p. 62.) But Terminello claims he initially filed a copy of his postconviction motion before the AEDPA deadline, on May 5, 2011. He attaches a copy of the motion's first page, which bears a date stamp showing it was provided to prison officials for mailing on May 5, 2011. (Doc. 1, p. 23.)[1] As Respondent points out, the appearance and placement of the initials on the date stamp bear significant similarities to the date stamp on the motion later filed on March 12, 2012. (*Id.* & Doc. 14-3, Ex. 32, p. 62.) But Respondent acknowledges that it cannot disprove the authenticity of the date stamp showing that Terminello first filed his postconviction motion by providing it to prison officials for mailing on May 5, 2011.

Accordingly, the Court will assume Terminello's Rule 3.850 motion was pending in state court as of May 5, 2011. On that date, the AEDPA limitation period was already tolled for the time to appeal his second Rule 3.800(a) motion. Terminello's postconviction motion, first filed on May 5, 2011, was pending until the state appellate court's mandate issued on June 15, 2020. (Doc. 14-26, Ex. 64.) Terminello then had 108 days after June 15, 2020, to file his § 2254 petition. His § 2254 petition, filed 98 days later on September 22, 2020, would be timely under § 2244(d)(1)(A). (Doc. 1, p. 1.)

---

[1] Under the prison mailbox rule, a prisoner's paper is deemed filed the day he provides it to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

Respondent contends that—even assuming Terminello filed his postconviction motion on May 5, 2011—the motion was not "properly filed" because it was excessively lengthy under state-law rules. *See Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (explaining that a state court application for collateral review is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings"). Respondent relies on a motion to file excess pages that Terminello filed in state court in which Terminello appears to refer to the May 5, 2011 postconviction motion and represented that the motion was 53 pages long with a 57-page memorandum. (Doc. 14-2, Ex. 17, p. 2.)

The version of Rule 3.850 in effect in May 2011 did not contain a specific page limit but provided that a motion must include a "brief statement" of the facts supporting the motion. *See In re Amends. to Fla. Rules of Crim. Proc. 3.850 & 3.851*, 72 So.3d 735, 738-39 (Fla. 2011). Some Florida courts dismissed postconviction motions exceeding 50 pages for violating the "brief statement" requirement. *See Schwenn v. State*, 958 So.2d 531 (Fla. 4th DCA 2007).

This Court declines to find that the May 5, 2011 motion was not properly filed due to its length. Although some Florida courts might have rejected this motion on that basis,

6

the Florida Rules of Criminal Procedure contained no definitive page limit in May 2011.[2]

Therefore, this Court will proceed as if the May 5, 2011 motion was properly filed and

Terminello's petition is timely under § 2244(d)(1)(A).

## III.   STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this

proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief

under the AEDPA can be granted only if a petitioner is in custody "in violation of the

Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of

the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction

on a claim that his conviction was obtained in violation of the United States Constitution

is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir.

2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim

adjudicated on the merits in state court unless the state court's adjudication:

---

[2] The Court also notes that Terminello's amended Rule 3.850 motion, which became the operative pleading, was 49 pages in length with 171 pages of attachments, for a total of 220 pages. (Doc. 14-6, Ex. 35, pp. 450-662; Doc. 14-7, Ex. 36, pp. 663-69.) Although Rule 3.850 does not set page limits on attachments, as opposed to the motion and memorandum, this motion was not rejected as overly lengthy. (Doc. 14-7, Ex. 36, pp. 671-93.)

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*

8

*v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Secretary, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court

"should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The state may "rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioners factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even where a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings

10

were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Terminello brings claims for ineffective assistance of trial counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

V.   <u>ANALYSIS</u>

A. Ground One

Terminello argues that trial counsel was ineffective for not calling his then-wife, Asha Terminello (Asha), to testify at trial. He contends that Asha was present when the victim came to their home for the school fundraising donation. This incident led to the charge of solicitation of lewd or lascivious conduct. Terminello asserts that Asha could have testified to this event and to other information that would suggest the instances of lewd or lascivious conduct could not have occurred.

At the state postconviction evidentiary hearing, Asha testified that when the victim came over to ask for a school fundraiser donation, she left after receiving a check. (Doc. 14-18, Ex. 47, pp. 1912-13.) Asha testified that she never saw the horse dance and that she could have offered trial testimony indicating that such incidents could not have happened given the family's busy routine. (*Id.*, pp. 1926-27.) She testified that their family was on a "very tight" schedule during the weekdays and that they were always with family on the weekends. (*Id.*, pp. 1927-28.) Asha testified that she told trial counsel she wanted to testify but that counsel told her that her testimony was not needed. (*Id.*, p. 1928.) Asha acknowledged that when the victim received the fundraising check, there may have been words spoken between the victim and Terminello that she did not hear. (*Id.*, p. 1932.)

Trial counsel testified that he believed that Asha was not credible, that her deposition was not believable, and that the State would easily impeach her. (Doc. 14-19, Ex. 48, pp. 2037-38.) Counsel explained that Asha testified in absolutes at her deposition. (*Id.*, p. 2194.) He addressed Asha's deposition testimony that from April to December 2005, she always got home before or at the same time as Terminello, she was always in his presence on weekends, and there was never an occasion when Terminello would have bene home by himself. (*Id.*) Counsel noted that Asha could not testify to the lewd or lascivious conduct charges or to why the victim would fabricate a story. (*Id.*, p. 2195.) Counsel summarized that Asha's inability to testify to the lewd or lascivious conduct charges, combined with her incredible deposition testimony and the fact that she was Terminello's wife, led him to conclude that Asha was not a viable defense witness. (Doc. 14-20, Ex. 49, p. 2223.)

The state court found counsel's testimony more credible than Asha's testimony. (*Id.*, p. 2256.) The state court also found that counsel made a reasonable strategic decision not to call Asha. (*Id.*) The state court determined that the decision was reasonable because Asha was not a credible witness, did not want to testify, could not testify with certainty that the victim and Terminello did not exchange words during the event that led to the solicitation charge, and could not offer testimony regarding the other charges. (*Id.*)

14

Therefore, the state court found that Terminello failed to show either deficient performance or resulting prejudice. (*Id.*)

Terminello does not show that the state court unreasonably applied *Strickland*. The state court's credibility finding is a finding of fact that is presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct unless [the petitioner] rebuts the presumption by clear and convincing evidence." (citing 28 U.S.C. § 2254(e)(1)). Terminello does not rebut the presumption of correctness by clear and convincing evidence.

Whether to call a witness is a strategic decision by counsel. *See Knight v. Fla. Dep't of Corr.*, 936 F.3d 1322, 1340 (11th Cir. 2019) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995))).

Counsel's strategic decisions "are entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, 141 S.Ct. 2405, 2410 (2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)). A strategic decision does not amount to ineffective assistance unless it is patently unreasonable. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been ineffective assistance only if it was so patently unreasonable that no competent

attorney would have chosen it" even when the decision "appears to have been unwise in retrospect") (citation omitted); *see also Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) ("Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices."). Further, "[i]t 'is reasonable—and not ineffective—for trial counsel to eliminate certain lines of presentation if he has misgivings about hurtful cross-examination and rebuttal witnesses.'" *Lukeheart v. Sec'y, Fla. Dep't of Corr.*, 50 F.4th 32, 47 (11th Cir. 2022) (quoting *Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010)).

Terminello does not show that counsel's decision not to call Asha was patently unreasonable or that it prejudiced him. Counsel, whose testimony the state court found credible, did not believe that Asha would be a credible witness, thought that the State could readily impeach her based on her deposition testimony, and never heard her state that she wanted to testify. Further, Asha had no direct knowledge of the lewd or lascivious conduct charges. While Asha had personal knowledge about facts relevant to the solicitation charge, she conceded that it was possible that Terminello said something to the victim that Asha could not hear. Terminello does not establish that counsel performed deficiently in not calling Asha, or a reasonable probability of a different outcome at trial had counsel done so.

Because the state court did not unreasonably apply *Strickland* or unreasonably determine the facts in denying Terminello's claim, Ground One warrants no relief.

## B. Ground Two

Terminello argues that trial counsel was ineffective for failing to defend against the solicitation charge. He asserts that counsel did not address this charge in his opening statement or closing argument and did not cross-examine the victim about this charge. Terminello asserts that counsel should have called Asha to testify and questioned the victim about her visit to his home for the school fundraiser.

At the evidentiary hearing, counsel testified that he did not specifically challenge the solicitation charge because the overall strategy was to attack the victim's credibility. (Doc. 14-19, Ex. 48, pp. 2004-05, 2045.) Counsel said another reason the defense did not offer testimony on the solicitation charge was that Asha was not credible, did not give believable testimony during her deposition, and would have been susceptible to impeachment. (*Id.*, pp. 2038-39.) Counsel also stated that there was one solicitation charge, whereas there were ten charges of lewd or lascivious conduct. (*Id.*, p. 2039.) Finally, counsel testified, Terminello was subsequently arrested for soliciting two young girls to watch him masturbate. (*Id.*, pp. 2047-48.) Counsel testified that making the solicitation

charge a feature of the trial carried the risk of the State attempting to offer rebuttal evidence about the subsequent incident. (*Id.*, p. 2048.)

The state court found counsel to be credible. (Doc. 14-20, Ex. 49, p. 2260.) The state court also found that the defense presented at trial "was that the victim was not credible," and that counsel did present a defense to the solicitation charge by challenging the victim's credibility. (*Id.*) Similar to its analysis of Ground One, the state court found that counsel made a reasonable strategic decision not to call Asha regarding the solicitation count because she was not credible and could not state with certainty whether Terminello might have said something to the victim that she did not hear. (*Id.*) The state court found that Terminello did not prove that counsel had performed deficiently. (*Id.*)

The state court's decision was reasonable. First, for the same reasons addressed in Ground One, *supra*, counsel made a reasonable strategic decision not to call Asha. The record also supports the state court's conclusion that counsel presented an overarching defense that the victim was not credible. Counsel cross-examined the victim and her friend about the victim's statements, and he called the friend to ask more questions about what the victim said. (Doc. 14-2, Ex. 3, pp. 286-307; 339-358; 442-59; 467-70.) Counsel also questioned the forensic interviewer, Debra Clements, about her interview of the victim. Clements was wearing an earpiece while conducting the interview. (*Id.*, p. 418.) A deputy,

18

who was watching the interview on a video feed in another room, communicated with her through the earpiece. (*Id.*) Clements told the victim about the earpiece and stated that the victim might hear talking through it. (*Id.*, p. 383.)

In closing arguments, counsel addressed the victim's inconsistent statements at length. Counsel discussed statements the victim made during statements and testimony, as well as statements to her friend, that were inconsistent, including how many times the horse dance happened; whether the horse dance happened on a couch, a chair, the floor, or a bed; whether she sat facing toward Terminello or away from him; whether she or Terminello were ever standing instead of sitting; whether she knew this was wrong; whether she felt his "private" or not; and whether they were ever lying on a bed. (*Id.*, pp. 506-10.)

Counsel also argued that the victim could have been influenced because the forensic interview took place weeks after she disclosed the acts, when she would have had time to talk to her family and her friend. (*Id.*, p. 520.) He noted that the victim stated during her interview that her mother told her to say that Terminello was mean. (*Id.*, p. 519.) Counsel also suggested that the victim's friend influenced her by asking her repeatedly what was wrong and pressured her by saying that she had to tell her parents. (*Id.*, pp. 503-04.)

19

Counsel also addressed the possibility that the victim heard what was said to Clements during the interview. (*Id.*, pp. 518-19.) He noted the victim's use of some language that he suggested was sophisticated for an eight-year-old, such as when she stated that Terminello "persuaded" her to participate in the horse dances and that the victim started using the term "private" after a pause where the interviewer was listening to her earpiece. (*Id.*, pp. 522-24.) Finally, counsel argued that the victim was not credible because some of her statements did not make sense, such as her remark that the horse dance was like sitting on a grandparent's lap. (*Id.*, p. 520.)

Thus, the state court did not unreasonably conclude that counsel performed effectively when he presented a defense to the charges by challenging the victim's credibility even though counsel did not specifically highlight the solicitation charge. Terminello does not show that the state trial court unreasonably applied *Strickland* or based its decision on an unreasonable factual determination. He is not entitled to relief on Ground Two.

## C. Ground Three

Terminello argues that trial counsel was ineffective for inviting the jury to watch the video recording of the victim's forensic interview during deliberations. The video was introduced into evidence and published to the jury. A videotaped out-of-court interview

with a child victim introduced into evidence under § 90.803(23), Fla. Stat.,[3] is not permitted in the jury room during deliberations. *See Young v. State*, 645 So.2d 965, 967 (Fla. 1994).

Counsel testified at the evidentiary hearing that he believed the victim's statements in that recorded interview were "materially different" from her deposition and trial testimony. (Doc. 14-19, Ex. 48, p. 2085.) Thus, he testified, he wanted the jury to watch the video to "compare or juxtapose the testimony that she gave in trial or deposition with . . . the answers she gave at the forensic interview shortly after these allegations arose." (*Id.*) He also testified that the trial strategy was to have the video in the jury room and that Terminello was fully informed about the strategy throughout the proceedings. (Doc. 14-19, Ex. 48, pp. 2102-03, 2215; Doc. 14-20, Ex. 49, p. 2224.)

The state court found counsel's testimony credible. (Doc. 14-20, Ex. 49, p. 2280.) The state court found that Terminello consented to the trial strategy of having the jury view the video to show inconsistencies in the victim's statements during the recorded interview compared to her statements at deposition and trial. (*Id.*) The state court found that the video "was not introduced for an improper purpose, did not have a tendency to suggest an emotional basis, and was not cumulative of evidence already presented." (*Id.*)

---

[3] Section 90.803(23), Fla. Stat., provides an exception to the rule against hearsay for statements of child victims.

Therefore, the state court found that Terminello failed to show deficient performance or prejudice. (*Id.*)

Terminello does not rebut by clear and convincing evidence the presumption of correctness that applies to the state court's finding that counsel's testimony was credible. *See Rolling*, 438 F.3d at 1301. Nor does he rebut the presumption of correctness that applies to the state court's finding that counsel's decision was strategic. *See Franks*, 975 F.3d at 1176 ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." (quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998))); *DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (stating that a question "regarding whether an attorney's decision is 'strategic' or 'tactical' is a question of fact").

Terminello does not show that counsel's strategic choice was so unreasonable as to amount to ineffective assistance. As counsel described in his evidentiary hearing testimony, the victim made inconsistent statements, and these inconsistencies were critical to the strategy of challenging the victim's credibility. Counsel testified that he "felt . . . strongly from a trial strategy standpoint that there were enough inconsistencies from that video and

the subsequent statements, that there was reasonable doubt." (Doc. 14-19, Ex. 48, pp. 2088-89.)

The state court found that Terminello consented to the strategy. (Doc. 14-20, Ex. 49, p. 2280.) The state court did not cite to the evidentiary hearing transcript in making this determination, but its finding appears to be based on counsel's testimony that the trial strategy was to have the video in the jury room and that Terminello was fully informed about the strategy throughout the proceedings. (Doc. 14-19, Ex. 48, pp. 2102-03, 2215; Doc. 14-20, Ex. 49, p. 2224.)

A petitioner cannot prevail on an argument that counsel was ineffective for undertaking a strategy to which the petitioner agreed. *See Acuna v. United States*, 494 F. App'x 961, 962-63 (11th Cir. 2012) ("This Court has stated that ineffective assistance does not exist under *Strickland* where the defendant ultimately concurred in his counsel's tactical decision or strategy. . . . Acuna essentially waived his right to contest his counsel's ineffectiveness [in not calling witnesses] by agreeing with that choice at trial."); *Hammond v. Hall*, 586 F.3d 1289, 1327-28 (11th Cir. 2009) (collecting cases standing for the proposition that a strategic decision by defense counsel does not amount to ineffective assistance under *Strickland* when the defendant agrees with the decision).

Even assuming that counsel's testimony that Terminello was informed of the trial strategy is not sufficient to find that he consented to the strategy, Terminello fails to show entitlement to relief. As addressed, counsel's strategy of attacking the victim's credibility involved both emphasizing the victim's inconsistent statements and pointing out how she might have been influenced during the interview, and counsel referred extensively to the video in making this argument to the jury. Terminello has not shown that the strategy of inviting the jury to view the video was patently unreasonable under these circumstances.

Finally, Terminello asserts that counsel's evidentiary hearing testimony about his strategy is refuted by the trial transcript because the transcript shows that counsel did not know the State would introduce the video. Specifically, when the prosecutor indicated that the State was going to publish the video, counsel responded, "I didn't realize you were going to do the video." (Doc. 14-2, Ex. 3, pp. 268-69.)

After reviewing this portion of the trial transcript, counsel explained that it was unclear whether the State was going to enter the video. Counsel testified that he was aware the State might not do so, "but they knew we had Debra Clements under subpoena and they knew we were going to put it in if they didn't put it in their case in chief. They didn't want to seem like they were hiding evidence or not being forthcoming with the jury. So they decided to put it in because they knew we were going to put it in." (Doc. 14-19, Ex.

48, p. 2091.) Counsel testified that Terminello was taking his remark at trial out of context and that it was "absolutely false" to describe his stated strategy as an "about-face." (*Id.*, pp. 2089-90.) Terminello has not shown any basis to rebut the presumption of correctness afforded to the state court's finding that counsel was credible in his evidentiary hearing testimony.

Terminello has not shown that the state court unreasonably applied *Strickland* or based its decision on an unreasonable factual determination. He is not entitled to relief on Ground Three.

### D. Ground Four

Terminello argues that trial counsel was ineffective for not objecting when the prosecutor improperly bolstered the credibility of interviewer Debra Clements. He asserts that the prosecutor referred to her as an expert even though she was not tendered as an expert witness and improperly inferred that Clements could obtain truthful answers from the victim. During his rebuttal closing argument, the prosecutor told the jury that the reason the State introduced the video "is so you can see what [the victim] said to the interviewer during a forensic interview and that's another important point. This is a forensic interview with an expert who's going through and questioning this little girl in a

non-threatening manner trying to get out what really happened." (Doc. 14-2, Ex. 3, pp. 539-40.)

Counsel testified at the evidentiary hearing that, as a part of his trial strategy, he does not necessarily make all possible objections. (Doc. 14-19, Ex. 48, pp. 2152, 2154.) He testified that objecting to "every marginally objectionable comment" might make an unfavorable impression on the jury. (*Id.*, p. 2202.) Counsel explained that he interpreted the prosecutor's statement to mean that Clements was an expert in interviewing witnesses and that he did not believe it was improper bolstering. (*Id.*, pp. 2158-60.) He testified that the statement was benign and that he did not believe it hurt the defense. (*Id.*)

The state court found counsel's testimony credible. (Doc. 14-20, Ex. 49, p. 2300.) The state court found that the State's comments during closing "did not rise to the level of improper bolstering of Ms. Clements' credibility." (*Id.*) The state court found that counsel made a strategic decision not to object because he did not think the comments harmed the defense. (*Id.*) The state court concluded that Terminello failed to show either deficient performance or prejudice. (*Id.*)

The state court did not unreasonably deny Terminello's claim. Terminello does not rebut by clear and convincing evidence the state court's findings that counsel's testimony was credible and that counsel made a strategic decision. *See Rolling*, 438 F.3d at 1301;

*Franks*, 975 F.3d at 1176. Terminello does not show that counsel made a patently unreasonable strategic decision for not objecting to the identified comment. Initially, the comment does not imply that Clements in fact obtained the truth from the victim; rather, it clearly states that she attempted to obtain the truth. And to the extent that the comment incorrectly indicated that Clements was an expert, Terminello does not show that counsel unreasonably chose not to object to this isolated reference rather than potentially call more attention to the comment by objecting.

Further, the comment did not amount to improper bolstering. It is improper for a prosecutor to bolster a witness's testimony by vouching for the witness's credibility. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1313 (11th Cir. 2010). Bolstering occurs when the prosecutor "plac[es] the prestige of the government behind the witness" or "indicat[es] that information not before the jury supports the witness's credibility." *Id.* at 1313-14. The identified comment does not fall within these parameters.

In addition, the remark that Clements was trying to get the victim to tell the truth was made in response to the defense's arguments that the victim may have been influenced during the interview. "[T]he prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel." *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014) (quoting *United States v. Sarmiento*, 744 F.2d 755, 765 (11th Cir. 1984)). The

prosecutor responded to the defense by asserting that the interviewer was merely questioning the victim in a non-threatening manner in an attempt to obtain an accurate recounting of the events. Finally, given the State's evidence of guilt, Terminello does not show a reasonable probability of a different outcome at trial had counsel successfully objected to the State's comment.

Terminello does not show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Four.

### E. Ground Five

Terminello argues that trial counsel was ineffective for failing to object when the prosecutor improperly commented on his failure to testify and shifted the burden of proof. During the State's rebuttal closing argument, the prosecutor stated:

> Up to this - - up to the point this starts happening to [the victim], she has a good relationship with her neighbor. There's been no evidence - - and the evidence that was - - the evidence doesn't suggest in any way, shape or form - - and that's what you have to rely on, the evidence.

> The judge is going to instruct you that you have to rely on the evidence submitted to you during the trial. The evidence does not suggest in any way, shape or form that she had any type of motive, that she's out to get Mr. Terminello, that she has any grudge with him, because there wasn't.

28

(Doc. 14-2, Ex. 3, pp. 543-44.)

Counsel testified that the prosecutor's comment was likely a response to his argument that the victim was lying. (Doc. 14-19, Ex. 48, pp. 2213-14.) The state court found counsel credible. (Doc. 14-20, Ex. 49, p. 2302.) The state court noted that the jury's role involves determining witness credibility, and that the jury "may properly consider whether or not a witness has a motive or an interest in how a case should be decided." (*Id.*) The state court found that the prosecutor's comments did not shift the burden to the defense or mislead the jury into believing that Terminello had to present evidence of a bad relationship or grudge between the victim and Terminello. (*Id.*) The state court determined that had counsel objected to the comments, the objection would have been overruled. (*Id.*, pp. 2302-03.) The state court determined that Terminello failed to show deficient performance or resulting prejudice. (*Id.*)

Terminello does not establish entitlement to relief. "[P]rosecutors must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence." *United States v. Sosa*, 208 F. App'x 752, 756 (11th Cir. 2006) (citing *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992)). Similarly, the prosecutor may not comment on the defendant's failure to testify. *See Bernal-Benitez*, 594 F.3d at 1315.

The state court reasonably concluded that the comment did not shift the burden or implicate Terminello's right to remain silent by suggesting that he was required to present evidence. Rather, as the state court found, the prosecutor was responding to the defense argument that the victim was not credible by asserting that no part of the evidence showed the victim had a motive to lie. In *Bernal-Benitez*, the prosecutor commented that "Nobody has submitted any evidence or argument to suggest to you why" FBI agents who were Government witnesses would lie. 594 F.3d at 1314. This comment was made after the defense argued that the jury should not believe the FBI agents' testimony. *Id.* at 1314-15. The Eleventh Circuit found that this comment did not shift the burden of proof because it "directed the jury's attention to the lack of evidence that the FBI agents were lying or fabricating evidence" and because it "focused on defense counsel's ability rather than obligation to introduce evidence to support their credibility arguments." *Id.* at 1315. Similarly, the prosecutor's comment in this case merely responded to the defense attack on the victim's credibility by asserting that the evidence before the jury did not show that the victim had a motive to lie.

Terminello fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. Terminello is not entitled to relief on Ground Five.

## VI.   CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Terminello must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Terminello has not made the requisite showing. Finally, because Terminello is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Terminello's Petition for Writ of Habeas Corpus, (Doc. 1), is **DENIED**. The **CLERK** is directed to enter judgment against Terminello and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on July 19, 2023.

Kathryn Kimball Mizelle
United States District Judge

31